M. J. Corboy Company v. Commissioner.
M. J. Corboy Co. v. Commissioner
Docket No. 4685.
United States Tax Court
1945 Tax Ct. Memo LEXIS 216; 4 T.C.M. (CCH) 447; T.C.M. (RIA) 45141; April 30, 1945
*216 Harry B. Sutter, Esq., and Harry D. Orr, Jr., Esq., 1 N. LaSalle St., Chicago, Ill., for the petitioner. Ned Fischer, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner had determined deficiencies for the calendar year 1941, in the following amounts: Income Tax
$ 3,096.61
Declared Value Excess Profits Tax
3,208.53
Excess Profits Tax
11,109.47
Total
$17,414.61 The return was filed with the collector of internal revenue for the first collection district of Illinois, at Chicago, Illinois. The only error assigned is respondent's action in disallowing, as a deduction, a portion of the salary paid to petitioner's president and treasurer, Leo J. Corboy. The deduction claimed was $50,400; the amount allowed was $26,500; and the amount disallowed was $23,900. [The Facts] Petitioner's business is that of contracting, plumbing, heating, and related work. It is perhaps the leading firm in its line in the Chicago area. It handles the larger projects such as office buildings, hospitals, hotels, manufacturing plants, power plants, etc. Seventy-five per cent of the installations in its line at the Chicago World's *217 Fair was made by petitioner. Leo J. Corboy entered the employ of petitioner in 1911, starting in at the bottom. He learned every phase of the business and became, long prior to the taxable year, the driving force on which the success of the enterprise depended. In 1937, as well as during the taxable year 1941, Leo was the president and treasurer of petitioner. He had been receiving for some years a salary of $9,000 per annum. In 1937 he asked for an increase in his compensation in keeping with the services he was rendering. As a result of his request, an arrangement was entered into between petitioner and Leo which provided that his base salary would remain at $9,000 per annum and, in addition, he would receive a bonus to be arrived at as follows: "After the first Ten Thousand ($10,000.00) Dollars of earnings and up to Fifty Thousand ($50,000.00) Dollars of earnings, the said LEO J. CORBOY shall receive as a bonus, twenty per cent (20 per cent) of said earnings. On all earnings of Fifty Thousand ($50,000.00) Dollars and above, the said LEO J. CORBOY shall receive as a bonus, twenty-five (25) per cent of said earnings." This bonus contract was in effect during the taxable year *218 and the salary paid Leo by petitioner which is in dispute was paid pursuant to this agreement. The following table gives in outline the operations of petitioner during the years 1936 to 1941, inclusive, the compensation paid to its officers, dividends declared and paid, etc.: Compen-
Compen-
sation of
sation of
Leo J.
John A.
Net Tax-
Total
Corboy
Corboy
Dividends
able Income
Officers'
President
Vice Presi-
Declared
per Income
Compen-
and
dent and
and
Year
Net Sales
Tax Return
sation
Treasurer
Secretary
Paid
1936
$ 412,669.02
$ 11,654.30
$19,000.00
$ 9,000.00
$10,000.00
None
1937
641,426.90
29,107.58
23,676.66
13,676.66
10,000.00
$25,000.00
1938
548,895.96
22,404.45
24,315.40
14,315.40
10,000.00
25,000.00
1939
609,599.70
15,258.56
20,198.62
10,198.62
10,000.00
12,500.00
1940
621,668.63
14,024.45
20,659.67
12,967.37
7,692.30
12,500.00
1941
3,200,110.77
423,520.28
60,400.00
50,400.00
10,000.00
50,000.00
From 1936 through 1941 petitioner had issued and outstanding 500 shares of common stock of a par value of $100 per share, and these shares were owned *219 through this period as follows: Leo J. Corboy
92 shares
18.4%
John A. Corboy
188 shares
37.6 Estate of M. J. Corboy
220 shares
44.  500       100%   No other stock was outstanding. It is the practice in businesses such as that conducted by petitioner to pay its chief executive officers a salary plus a bonus. Petitioner's business depends for success primarily on management and no large amount of capital is needed in its operations. The volume of business and profits fluctuates widely through cycles in the building trade and those engaged in this type of business expect to make more money in the years of big volume to tide them over the lean years. The reason for the practice of paying a bonus is that the margin of profit is small in this highly competitive field and good management spells the difference between success and failure. Leo was the executive head of petitioner and all important matters were handled under his direction. In 1941 petitioner experienced a great increase in its volume of sales as shown by the table already set forth in this opinion, and profits increased to even a greater degree. To direct and organize this increased *220 business required management of the highest order and ability which was only attainable as a result of long years of practical experience. While a considerable part of this increase in business was due to war activities, it is noteworthy that the volume of petitioner's business unrelated to the war effort during the taxable year was in excess of all of its business in the prior year, although some of its business in 1940 was, in fact, occasioned by war contracts. Leo worked during the taxable year without any real vacation, seven days a week and practically every evening, often until long past midnight. He supervised most of the estimating for the bids, ordered the material, supervised the contracts, hired labor, and made the collections for the work performed. He handled the financing for petitioner which became necessary due to its increased volume and personally guaranteed petitioner's loans at the bank. A number of the construction jobs were out of town and Leo spent much of his time away from home. The only other officer was John Corboy who was ill and away from the business for several months in 1941. He received a salary of $10,000 as vice president and secretary. Two qualified *221 witnesses, who were familiar over a long period of years with petitioner's activities and Leo's part in them, testified unequivocally that the salary paid Leo in 1941 was entirely reasonable and in keeping with salaries paid other executives in similar or related businesses. No testimony bearing on the reasonableness of Leo's salary was offered by respondent. The salary paid Leo bears no close relationship to stock ownership and may not be regarded as a distribution of earnings in disguise. After fully weighing all of the evidence and hearing argument from counsel for the respondent, decision was rendered from the bench to the effect that the salary paid Leo by petitioner for the year 1941, in the sum of $50,400, was reasonable compensation within the meaning of section 23(a)(1)(A) of the Internal Revenue Code, and as such is deductible in determining petitioner's net income. Decision rendered at the conclusion of the trial is here adhered to. Decision will be entered under Rule 50.